**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 25-25262-CIV-MARTINEZ**

**YINBING CHEN**,

      Plaintiff,

v.

**THE INDIVIDUALS, PARTNERSHIPS, AND**
**UNINCORPORATED ASSOCIATIONS**
**IDENTIFIED ON SCHEDULE A**,

      Defendants.

_____/

**PLAINTIFF' MOTION FOR ENTRY OF PRELIMINARY INJUNCTION AND**
**MEMORANDUM OF LAW IN SUPPORT THEREOF**

Plaintiff YINBING CHEN ("Plaintiff") respectfully moves the Court to convert the temporary restraining order issued in this matter into a preliminary injunction against Defendants, The Individuals, Partnerships, and Unincorporated Associations Identified on Schedule A [ECF No. 21] (collectively, "Defendants") pursuant to 35 U.S.C. § 283, Fed. R. Civ. P. 65, the All Writs Act, 28 U.S.C. § 1651(a), and the Court's inherent authority. Plaintiff further requests a hearing on the requested injunctive relief pursuant to Local Rule 7.1(b)(2) and Federal Rule of Civil Procedure 65(b)(3). In support thereof, Plaintiff submits the following memorandum of law.

**MEMORANDUM OF LAW**

**I.      INTRODUCTION**

The same findings that led the Court to enter the Temporary Restraining Order ("TRO") [ECF No. 21] against the Defendants on December 16, 2025 warrant the entry of a preliminary injunction that continues to prohibit Defendants' further use of U.S. Patent U.S. Patent No.

D1,007,236S (the "236 Patent" or "Plaintiff's Patent") namely the Griddle ("Infringing Products"), pending a final determination on the merits. The Court entered the TRO against Defendants based upon Plaintiff's evidence showing that each Defendant has made, used, sold, offered for sale, or imported products that are likely to be found to infringe at least one (1) Plaintiff's Patent (the "Infringing Products"), within this District and throughout the United States by operating fully interactive e-commerce stores (the "Internet Stores") under their seller names identified on Schedule A hereto through various online marketplace accounts. In connection therewith, the Court entered a TRO that prohibited Defendants' use of the Plaintiff's Patent.

## II.      STATEMENT OF FACTS

### A.      Plaintiff's Rights

Plaintiff is the applicant and assignee of the '236 Patent. Plaintiff's Products are distributed and sold to consumers throughout the United States, including consumer in Florida. Plaintiff is the lawful owner of all right, title, and interest in and to the federally patented Plaintiff's Patent.

The registrations for Plaintiff's Patent as to his designs are valid, in full force and effect pursuant to 35 U.S.C. §282. The registrations for Plaintiff's Patent constitute *prima facie* evidence of its validity and of Plaintiff's exclusive rights to use its Patent pursuant to 35 U.S.C. §§261, 282. Plaintiff's Patent has been used exclusively and continuously by Plaintiff and has never been abandoned.

Plaintiff's Griddle Products is known for its distinctive patented designs, which are associated with the quality and innovation the public has come to expect from Plaintiff's products. Plaintiff uses his designs in connection with its Griddle products.

### B.      Defendants' Unlawful Activities

Recently, a large number of Griddles bearing Plaintiff's Patent were dumped on the market,

causing market chaos and caused a serious impact on Plaintiff's genuine and patented products. *See* [ECF No. 19-1], Declaration of Yinbing Chen ("Chen Decl.") ¶7, which is being refiled herein for the Court's convenience. Most importantly, the infringing products sold by the defendants were of poor quality, which expose the customers to potential safety risks, directly leading to consumers who mistakenly purchased the infringing products constantly questioning and criticizing Griddle products, which greatly adversely affects my goodwill. *Id*.

Specifically, orders were placed on Amazon.com and Walmart.com from each of the Defendant's Seller Storefronts set forth in Schedule A of the Complaint of products from each of those Defendants – all directly or indirectly bearing the designs of the Plaintiff's Patent at issue in this action. *See* Chen Decl. ¶ 10. None of the Defendants have ever been authorized to manufacture, sell, or offer for sale its products bearing the Plaintiff's Patent. *Id.*

Defendants are making substantial sums of money by preying upon members of the general public. Moreover, Defendants' Griddle products bearing Plaintiff's Patent infringed Plaintiff's exclusive right to its Patent. Ultimately, Defendants' Internet activities amount to nothing more than illegal operations, infringing on Plaintiff's intellectual property rights. The Storefronts and associated payment accounts are a substantial part of the means by which Defendants further their scheme and cause harm to Plaintiff.

## III.    PROCEDURAL BACKGROUND

On November 12, 2025, Plaintiff filed this action against Defendants for patent infringement pursuant to 35 U.S.C. § 271. On December 4, 2025, Plaintiff filed an *Ex Parte* Application for Entry of Temporary Restraining Order [ECF No. 19]. On December 16, 2025, the Court issued the TRO temporarily restraining Defendants from infringing the Plaintiff's Patent and directing marketplace platforms to identify and restrain funds in payment accounts

associated with Defendants to avoid fund diversion [ECF No. 21]. On January 14, 2026, this Court issued the Extending Temporarily Restraining Order for "good cause shown" because Plaintiff's counsel did not receive the mailed order until January 9, 2026. *See* [ECF No. 24]. Pursuant to the Court's TRO, Plaintiff notified the marketplace platforms identified on Schedule A and posted its required bond. *See* [ECF No. 26]. Thereafter, on January 26, 2026, Plaintiff effectuated service of process on Defendants and filed a Certificate of Service [ECF No. 25]. Plaintiff now respectfully move the Court to convert the TRO into a preliminary injunction against the Defendants and request a hearing on the requested injunctive relief pursuant to Local Rule 7.1(b)(2).

## IV.    ARGUMENT

### A.    Preliminary Injunction is Essential to Prevent Irreparable Injury

Rule 65(a)(1) of the Federal Rules of Civil Procedure provides that a Court may issue a preliminary injunction only on notice to the adverse party. Fed. R. Civ. P. 65(a)(1). Plaintiff has served Defendants with a copy of the TRO, together with all other documents filed in this matter, thereby providing notice to Defendants, by email, messaging through the platform, and/or by website posting. *See* [ECF No. 25]. Further, Plaintiff will be providing Defendants with notice of the instant Motion upon filing by serving Defendants with a copy of the same.

This Court has personal jurisdiction over each Defendant. *Louis Vuitton* Malletier*, S.A. v. Mosseri*, 736 F.3d 1339, 1354 (11th Cir. 2013) (holding that the Southern District of Florida regularly exercises personal jurisdiction over websites offering for sale and selling infringing merchandise that is offered for sale or sold without authorization to Florida residents over the internet). Plaintiff' investigations show that each Defendant's Internet Store offers for sale and enables shipment of the Infringing Products to addresses within this Judicial District.  Chen Decl.

REINER & REINER, P.A.
ONE DATRAN CENTER ⬥ 9100 SOUTH DADELAND BLVD ⬥ SUITE 901 ⬥ MIAMI ⬥ FLORIDA ⬥ 33156 ⬥ TEL: 305 670-8282 ⬥ FAX: 305 670-8989

¶9. In fact, Exhibit 3 to the Chen Declaration provides vendor-by-vendor screenshots and order records from each Internet Store demonstrating the ability to purchase and ship the Infringing Products into the District. *Id.* ¶9 & Ex. 3 thereto. This Court also has original subject matter jurisdiction over patent claims pursuant to 35 U.S.C. § 1 *et seq.*, 28 U.S.C. §§ 1331, 1338(a)–(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391, 1400.

Defendants' ongoing infringement inflicts immediate, irreparable, and indivisible harm to Plaintiff that warrants continuation of the Court's existing relief through a preliminary injunction to preserve the status quo. Each Defendant here unlawfully makes, uses, sells, offers for sale, or imports goods that infringe at least one (1) of the Plaintiff's Patent via the Defendant Internet Stores. By their actions, Defendants are eroding consumer confidence, depleting Plaintiff's hard-earned brand equity, and diluting Plaintiff's market share. The sheer number of Defendants in conjunction with their anonymity renders individual enforcement efforts impractical and ineffective. Furthermore, the similarity in Defendants' conduct and product offerings indicate a single, interconnected scheme that inflicts individual, concurrent, and indivisible injury on Plaintiff.

The Court has already recognized this ongoing harm and the need for immediate equitable relief by granting Plaintiff's motion for TRO. Those same circumstances persist, brand confidence is damaged, which can result in a loss of future sales and market share. Chen Decl. ¶20. The extent of harm to the reputation and goodwill of Griddle products and the possible diversion of customers due to loss in brand confidence are largely unquantifiable *Id.*

The entry of a preliminary injunction will stop Defendants from benefiting from their unlawful infringement of Plaintiff's Patent and will preserve the status quo until the case is decided on the merits. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 445–46 (1974). Without the relief requested herein,

Defendants' infringing activities will continue unabated, nullifying the protection afforded by the TRO and inflicting harm that cannot be compensated by monetary damage alone.

Defendants' unlawful sales of infringing products have generated proceeds that are likely held overseas and are easily dissipated or concealed through online commerce. Continuing the asset freeze is necessary to prevent Defendants from transferring or hiding funds, to maintain the Court's ability to grant full relief (including reasonable royalties and lost profits), and to ensure that any judgment entered in Plaintiff's favor remains meaningful and enforceable. *See, e.g.*, *Louis Vuitton Malletier v. Beltteen*, No. 18-cv-62871, 2018 WL 7144485, at *3 (S.D. Fla. Dec. 11, 2018) (order granting *ex parte* application for temporary restraining order and order restraining transfer of defendants' assets).

### B. The Four Factors That Warranted Entry of a TRO Continue to Favor Entry of a Preliminary Injunction

In this Circuit, the standard for obtaining a temporary restraining order and the standard for obtaining a preliminary injunction are the same. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225 (11th Cir. 2005). To obtain a temporary restraining order or a preliminary injunction, a party must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Id.* at 1225–26; *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets).

### 1. Probability of Success on the Merits of Plaintiff's Claims

Plaintiff will likely succeed on its patent infringement claims. A plaintiff must show that an asserted patent would "more likely than not" withstand a validity challenge and that the patent is infringed to obtain preliminary relief. *Doubleday Acquisitions LLC v. Envirotainer AB*, No.

REINER & REINER, P.A.
ONE DATRAN CENTER ⬧ 9100 SOUTH DADELAND BLVD ⬧ SUITE 901 ⬧ MIAMI ⬧ FLORIDA ⬧ 33156 ⬧ TEL: 305 670-8282 ⬧ FAX: 305 670-8989

1:21-CV-03749-SCJ, 2022 WL 2784800, at *3 (N.D. Ga. May 31, 2022); *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376–80 (Fed. Cir. 2009). "Each issued patent carries with it a presumption of validity under 35 U.S.C. § 282" sufficient to establish a likelihood of success on the validity issue. *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1205 (Fed. Cir. 2017); *Doubleday Acquisitions*, 2022 WL 2784800, at *3.

Plaintiff's Griddle products have always been useful and popular, driven by arduous quality standards, innovative structure and design. Chen Decl. ¶ 4. Thus, Defendants face the statutory presumption of validity, and nothing before the Court undermines that presumption at this stage. *Tinnus*, 846 F.3d at 1205. Plaintiff has not licensed or authorized Defendants to practice the Plaintiff's Patent, and none of the Defendants are authorized retailers. Amended Complaint ¶ 17; Chen Decl. ¶ 10.

For design patent infringement, courts consider whether an "ordinary observer," familiar with the prior art, would view the overall appearance of the accused design as "substantially similar" to the patented design and that "the accused device contains substantially the same points of novelty that distinguished the patented design from the prior art." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 668 (Fed. Cir. 2008) (internal citation omitted). An infringing product need not be an exact copy of the patented design, and Defendants cannot escape infringement by introducing minor variations. *Egyptian Goddess*, 543 F.3d at 669–70.

Here, side-by-side comparisons in Exhibit 2 to the Chen Declaration show that each Infringing Product identified on Schedule A, to an ordinary observer, substantially the same in overall visual impression as the design claimed by the '236 Patent. *See* Chen Decl. ¶9 & Ex. 2 thereto. Under *Egyptian Goddess*, this satisfies the ordinary-observer test. 543 F.3d at 668.

7

### 2.     Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief

Defendants' ongoing sale of Infringing Products is causing Plaintiff's brand equity depletion, loss of market share, and loss of exclusivity in the very market it created. Chen Decl. ¶¶ 19-23. A patent confers "the right to exclude others from using his property." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006) (citing *Fox Film Corp. v. Doyal*, 286 U.S. 123, 127 (1932)) (internal citation omitted). Violation of a patent owner's "right to exclude" renders monetary remedies inadequate in circumstances where exclusivity, market position, and brand equity are actively depleted. *Id.*; Chen Decl. ¶ 20. Indeed, courts have held that a "loss in market share" constitutes irreparable harm. *Robert Bosch LLC v. Pylon Mfg. Co.*, 659 F.3d 1142, 1149–51 (Fed. Cir. 2011) (holding that it is a "clear error of judgment" to deny irreparable harm when the accused product causes a direct competitor patentee to lose market share and access to prospective customers). The harm Defendants' activity is causing Plaintiff is therefore irreparable and warrants immediate injunctive relief.

Defendants are making, using, offering for sale, selling, and importing unauthorized products that infringe on the '236 Patent. Amended Complaint ¶¶ 18-19. Defendants have willfully directed infringing activity to this District by targeting Florida consumers with products designed to directly compete with Plaintiff's Griddle and sold through Internet Stores that accept U.S. dollars and ship into this District. *Id.* ¶ 11. Plaintiff has not licensed or authorized Defendants to use the Plaintiff's Patent, and none of the Defendants is an authorized Griddle retailer. *Id.* ¶ 12.

Since the Defendants have begun selling their infringing products this year, Plaintiff has suffered from decreased consumer confidence, brand equity depletion, and market status

dilution—ongoing harm that cannot be adequately remedied by money damages. *Id.* ¶¶ 18-19. Defendants' infringement erodes Plaintiff's brand equity, undermining consumer confidence and diminishing the premium associated with Plaintiff's innovation. ¶ 20. Defendants are free-riding on Plaintiff's time and capital intensive inventions, capturing sales that would otherwise accrue to Plaintiff, diluting market share, eroding price premium, and increasing the risk of poor product quality. *Id.*; *Robert Bosch*, 659 F.3d at 1151. Plaintiff's ongoing success and development of Griddle products depends on its continuing sales in the market. Losing market share to Infringing Products is a clear threat to its continued existence as an innovator. Chen Decl. ¶4.

Furthermore, Rule 20(a)(2)(A) permits defendants to be "joined in one action . . . if any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." While each individual Defendant's actions, alone, cause Plaintiff irreparable harm, the sheer number of Internet Stores is a force multiplier of those individual harms that creates a massive single reputational harm to Plaintiff. Plaintiff faces significant economic and logistical challenges in enforcing its intellectual property rights against each Internet Store individually. Single defendant enforcement in the face of the overwhelming infringement points of sale made possible by the unregulated and anonymous nature of the internet is impractical, ineffective, and does not remedy the actual harm to Plaintiff caused by the combined effect of all of Defendants' simultaneous infringing operations. The anonymity and mass-reach the internet provides makes identifying the full extent and scope of the Defendants' infringing operations nearly impossible. Defendants, each of whom is likely aware of the existence of the illegal marketplace and the activities of the others to perpetuate the same, are combining the force of their actions to cause individual, concurrent, and indivisible harm to Plaintiff and consumers. In other words, Defendants' activities are all logically part of the same occurrence and each is therefore properly joined in this action under Fed. R. Civ. P. 20. *See Bose*

9

*Corp. v. The P'ships and Unincorporated Ass'ns Identified on Schedule "A,"* 334 F.R.D. 511 (N.D. Ill. Feb. 19, 2020) (holding that the combined effect of the individual harm suffered by a plaintiff from defendants operating online marketplaces infringing the plaintiff's intellectual property rights creates injuries to the plaintiff in the aggregate constituting an occurrence under Rule 20).

Immediate injunctive relief is essential to prevent further loss of market share and brand equity during a critical commercial period. Continued infringement will irreversibly erode network effects and first-mover recognition that cannot be restored after trial. Chen Decl. ¶ 23.

### 3. The Balance of Hardship Tips Sharply in Plaintiff's Favor

The balance of equities strongly favors immediate injunctive relief because the concrete, ongoing harm to Plaintiff from direct copying and loss of control over its patented product and brand vastly outweighs any claimed burden on Defendants, who have no lawful entitlement to profits from their continued infringement. *See Schiavo*, 403 F.3d at 1225–26.

Plaintiff is suffering present hardship "from loss of sales and its inability to control its reputation" because of Defendants' infringement. *See Daka Rsch., Inc. v. Individuals*, No. 22-cv-60246, 2023 WL 5310240, at *4 (S.D. Fla. July 14, 2023), *aff'd and adopted*, 2023 WL 5289258, at *1 (S.D. Fla. Aug. 17, 2023). Plaintiff's brand and reputation are harmed when the innovations protected by the Plaintiff's Patent are incorporated into goods not authorized, produced, or manufactured by Plaintiff. Chen Decl. ¶ 20. Defendants' infringing conduct strips Plaintiff of control over the quality of products embodying its patented design and technology and over its reputation that is not measurable or compensable with money damages. *Id.* ¶ 21. Defendants' infringing conduct undermines consumer confidence in Plaintiff's brand. *Id.* ¶ 22. Furthermore, Defendants' Internet Stores target U.S. consumers, accept U.S. dollars, and ship into the District. Amended Complaint ¶ 5. Absent the requested injunctive relief, Defendants' actions will continue to divert demand from Plaintiff.

REINER & REINER, P.A.
ONE DATRAN CENTER ◆ 9100 SOUTH DADELAND BLVD ◆ SUITE 901 ◆ MIAMI ◆ FLORIDA ◆ 33156 ◆ TEL: 305 670-8282 ◆ FAX: 305 670-8989

By contrast, being ordered to stop infringing patents they have no right to practice in the first place poses no cognizable hardship on Defendants. *See Daka Rsch.*, 2023 WL 5310240, at *4. Any harm Defendants claim is self-inflicted because they chose to build and sell products infringing the Plaintiff's Patent. *C.B. Fleet Co., Inc. v. Unico Holdings, Inc.*, 510 F. Supp. 2d 1078, 1083 (S.D. Fla. 2007) ("[A] company cannot build a business on infringements and then argue that enforcing the law will cripple that business."). The equities therefore weigh decisively in favor of granting the requested injunctive relief.

### 4.      Issuance of the Injunction is in the Public Interest

An injunction here squarely serves the public interest by protecting consumers and safeguarding the patent system from ongoing harm. Courts consider whether an injunction serves the public interest, including protecting consumers and patent rights that incentivize innovation. *See Daka Rsch.*, 2023 WL 5310240, at *4; *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 809 F.3d 633, 647 (Fed. Cir. 2015) ("[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his invention.").

Enjoining the ongoing online sale of infringing Products protects consumers from being misled by Infringing Products that trade on the Plaintiff's Patent. *Daka Rsch.*, 2023 WL 5310240, at *4. An injunction will ensure that consumers have a smooth and reliable experience with their Griddle Products as designed by Plaintiff and will prevent consumers from associating inferior products with Plaintiff. Injunctive relief would also advance the public's interest in technological progress and innovation by rewarding genuine breakthroughs and strengthening the incentives for technological pioneers to invest in new technologies and design. *Apple*, 809 F.3d at 647. Allowing Defendants to continue profiting from infringement would serve only to

undermine these consumer-protection and innovation interests and chill future product development, while halting infringement aligns with the public's interest in the patent system's core purpose. *Daka Rsch.*, 2023 WL 5310240, at *4.

### C.      The Equitable Relief Sought is Appropriate

The Patent Act authorizes courts to issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. Furthermore, Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a preliminary injunction upon notice. The facts in this case warrant such relief.

#### 1.      The Preliminary Injunction Should Continue to Enjoin Defendants' Unauthorized and Unlawful Use of the Plaintiff's Patent

Plaintiff requests that the Court to convert the TRO to a preliminary injunction that continues to require Defendants to cease manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products infringing the Plaintiff's Patent, including the products identified on Schedule A. Plaintiff is experiencing ongoing irreparable harm—including reduced consumer trust, brand equity depletion, and market status dilution—because of Defendants' ongoing infringement. This relief is essential to continue to prevent erosion of market share and brand equity, and to stop Defendants from continuing to benefit from their unlawful infringement of the Plaintiff's Patent while this case is pending for final adjudication. Many courts, including this Court, have authorized injunctive relief in similar cases involving the unauthorized and unlawful infringement of patents. *See, e.g.*, *SHEFIT Operating Co., LLC v. Individuals*, No. 0:24-CV-61310, 2024 WL 4880617, at *3 (S.D. Fla. Nov. 22, 2024).

#### 2.      The Preliminary Injunction Should Continue the Restraint of Defendants' Assets

In addition to converting the temporary restraining order into a preliminary injunction that

REINER & REINER, P.A.
ONE DATRAN CENTER ◆ 9100 SOUTH DADELAND BLVD ◆ SUITE 901 ◆ MIAMI ◆ FLORIDA ◆ 33156 ◆ TEL: 305 670-8282 ◆ FAX: 305 670-8989

continues to enjoin the Defendants' unlawful practices, the Court's preliminary injunction should continue to limit the transfer of Defendants' unlawfully gained assets. This restriction will preserve Plaintiff' ability to obtain monetary relief—including reasonable royalties and lost profits for sales of Infringing Products—given the substantial risk that Defendants, who appear to hold most of their assets overseas, will conceal or transfer funds and render any final judgment useless.

Courts possess inherent equitable authority to impose a prejudgment asset freeze where a plaintiff seeks equitable relief, including an accounting and disgorgement of ill-gotten gains. *See, e.g.*, *SHEFIT*, 2024 WL 4880617, at \*3. Such restraints are meant to ensure the efficacy of the eventual judgment. *See, e.g.*, *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 708–709 (5th Cir. 2007). When a complaint seeks relief authorized by statute, including monetary relief under the Patent Act (35 U.S.C. § 284), courts may exercise their equitable powers to restrain the transfer of assets pending adjudication, especially where the illicit nature of the enterprise and the use of online commerce allows for the rapid dissipation, concealment, and offshore transfer of funds. *SEC v. ETS Payphones*, 408 F.3d 727, 735–36 (11th Cir. 2005) (upholding freeze of defendants' assets).

Here, without a prejudgment restraint, Defendants are likely to move funds to foreign accounts or otherwise conceal assets, thwarting any final judgment and rendering Plaintiff' remedies meaningless. The requested asset freeze will preserve the efficacy of the Court's powers, protect Plaintiff' ability to obtain reasonable royalties and lost profits, and prevent irreparable dissipation pending a preliminary injunction hearing.

### D.     The Posted Bond is Sufficient to Secure the Injunction

The posting of security upon issuance of a preliminary injunction is vested in the Court's sound discretion. Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Plaintiff's counterfeiting evidence against each of the Defendants at issue, Plaintiff respectfully

REINER & REINER, P.A.
ONE DATRAN CENTER ◆ 9100 SOUTH DADELAND BLVD ◆ SUITE 901 ◆ MIAMI ◆ FLORIDA ◆ 33156 ◆ TEL: 305 670-8282 ◆ FAX: 305 670-8989

requests this Court to require it to maintain its previously posted bond in the amount of Ten thousand dollars ($10,000.00) [ECF No. 26], subject to increase at the Court's discretion should an application be made in the interest of justice.

### E.  Request for Hearing

In accordance with Local Rule 7.1(b)(2) and pursuant to Federal Rule of Civil Procedure 65(b)(3), Plaintiff respectfully requests the Court to schedule a hearing on the instant Motion to allow Defendants and/or any other affected persons to challenge the appropriateness of the Motion and move to dissolve the same.  The preliminary injunction Plaintiff is seeking would maintain the relief granted in the TRO during the pendency of the matter.  Plaintiff estimates the time required for argument will be approximately 30 minutes.

**WHEREFORE,** Plaintiff respectfully requests that this Court schedule a hearing on Plaintiff's Motion for Preliminary Injunction pursuant to Local Rule 7.1(b)(2) and Federal Rule of Civil Procedure 65(b)(3) to convert the TRO into a preliminary injunction as to Defendants in the form Plaintiff will submit to the Court prior to the scheduled hearing date.

**DATED:  January 29, 2026**               Respectfully Submitted,

**REINER & REINER, P.A.**
*Counsel for Plaintiff*
9100 South Dadeland Blvd., Suite 901
Miami, Florida   33156-7815
Tel: (305) 670-8282; Fax: (305) 670-8989
dpr@reinerslaw.com; eservice@reinerslaw.com

By: _____
  **DAVID P. REINER, II, ESQ.**; FBN 416400

REINER & REINER, P.A.
ONE DATRAN CENTER ⬥ 9100 SOUTH DADELAND BLVD ⬥ SUITE 901 ⬥ MIAMI ⬥ FLORIDA ⬥ 33156 ⬥ TEL: 305 670-8282 ⬥ FAX: 305 670-8989

## <u>CERTIFICATE OF SERVICE</u>

*I HEREBY CERTIFY that on* **January 29, 2026**, *I filed the foregoing with the Clerk of the Court via CM/ECF. I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.*

By: _____
**DAVID P. REINER, II**; FBN 416400

REINER & REINER, P.A.
ONE DATRAN CENTER ◆ 9100 SOUTH DADELAND BLVD ◆ SUITE 901 ◆ MIAMI ◆ FLORIDA ◆ 33156 ◆ TEL: 305 670-8282 ◆ FAX: 305 670-8989